## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

CHARLES HENDRIX,

     Plaintiff,

v.

BOARD OF REGENTS FOR THE
UNIVERSITY SYSTEM OF
GEORGIA,

     Defendant.

Civil Action No.:

## COMPLAINT

Plaintiff Charles Deon Hendrix ("Hendrix" or "Plaintiff") files this Complaint against the Board of Regents for the University System of Georgia (the "Board" or "Defendant"), showing the following.

## NATURE OF THE ACTION

Mr. Hendrix brings the following claims against the Board arising from the Board's discriminatory and retaliatory termination of Mr. Hendrix's employment with Georgia Southern University ("GA Southern" or the "University"):

I.    A claim for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* taken by Defendant against Mr. Hendrix for engaging in activity protected by Title VII.

1

## THE PARTIES

1.      Mr. Hendrix is an individual resident of Bulloch County, Georgia.

2.      Mr. Hendrix consents to the jurisdiction of this Court by filing his complaint.

3.      The Board is a corporate body established by the Constitution of the State of Georgia and the Official Code of Georgia to operate publicly funded post-secondary educational institutions in Georgia, including Georgia Southern University.

4.      The Board may be served through its Chairman, David B. Dove, or any other of the Board's officers, secretaries, cashiers, managing agents, or other agents.

5.      The Board may be served at 270 Washington Street SW, Atlanta, Georgia, 30334.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over Mr. Hendrix's claims under 28 U.S.C. § 1331 because Mr. Hendrix's claims raise questions of federal law.

7.      Congress has abrogated the state of Georgia's Eleventh Amendment immunity for claims brought under Title VII.

8.      This Court has personal jurisdiction over Defendant on the grounds that Defendant is corporate body of the State of Georgia established by the Constitution of the State of Georgia and the Official Code of Georgia

2

9.      This Court further has personal jurisdiction over Defendant because Defendant is a corporate entity conducting business within the state of Georgia.

10.     Venue is proper in this division under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this division.

## FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S CLAIMS

11.     Mr. Hendrix is a black male.

12.     GA Southern hired Mr. Hendrix as a custodial floor technician on or around December 10, 2012.

13.      GA Southern promoted Mr. Hendrix several times in the period from December 2012 to May 2024 based on the quality of his work performance.

14.      GA Southern promoted Mr. Hendrix to Custodial Supervisor in or around February 2014.

15.     GA Southern promoted Mr. Hendrix again in 2023 to the position of Interim Custodial Superintendent and promoted him permanently into the position of Custodial Superintendent in or around May 2024.

16.     On May 1, 2025, William Cone was appointed as Interim Assistant Director of Facilities Operations at GA Southern.

17.     Mr. Cone is a white male.

18.    As Interim Assistant Director of Facilities Operations, Mr. Cone oversaw the custodial department where Mr. Hendrix worked.

19.    Mr. Cone supervised Mr. Hendrix.

20.    The custodial department at GA Southern is a majority-black department and is predominantly comprised of black employees.

21.    Almost immediately after his appointment, Mr. Cone began instructing Mr. Hendrix to engage in hiring and disciplinary practices that would violate federal anti-discrimination law.

22.    On or around May 15, 2025, Mr. Cone met with Mr. Hendrix and asked him how a transgender employee employed by the custodial department "slipped through the cracks" and was hired.

23.    Mr. Cone explicitly instructed Mr. Hendrix, not to hire transgender applicants in the future, stating "we don't hire people like that."

24.    Mr. Hendrix opposed Mr. Cone's instructions not to hire transgender applicants stating, "I can't not hire people [sic], it's federal law."

25.    Mr. Cone reiterated his instructions to Mr. Hendrix not to hire transgender applicants stating that there were "ways around" federal antidiscrimination law.

26.    Mr. Cone also instructed Mr. Hendrix to interfere with employees' medical leave rights.

27.    Mr. Cone instructed Mr. Hendrix to retaliate against employees who used medical leave.

28.    Specifically, Mr. Cone told Mr. Hendrix that he needed to "find a way to get rid of staff on FMLA [leave]" and gave him three months to do so.

29.    On May 28, 2025, following Mr. Hendrix's opposition to Mr. Cone's unlawful directives, Mr. Cone requested that GA Southern's HR department audit the timekeeping records of custodial department employees, including Mr. Hendrix, without Mr. Hendrix's knowledge.

30.    Mr. Cone did not request HR audit the timekeeping records of other non-majority black departments within the facilities staff under his supervision.

31.    On May 17, 2025, Mr. Hendrix arrived at work and noticed that all of the locks had been removed from the offices of custodial supervisors and foremen.

32.    The locks were not removed from the doors of supervisors in any other facilities department.

33.    During a scheduled management meeting on June 12, 2025, Mr. Hendrix asked about the May 17th removal of the locks.

34.    Mr. Hendrix also complained that he felt the custodial department was held to a higher standard than other departments because it was comprised of primarily black employees while the other facilities departments are predominantly white.

5

35. Mr. Hendrix specifically identified incidents where policies were only applied to the custodial department and not other predominantly white facilities departments.

36. Mr. Cone became visibly agitated by Mr. Hendrix's complaints.

37. Mr. Cone slammed his hands against one another and yelled "I made that decision, that's my decision" regarding the removal of the locks from custodial supervisor's doors.

38. Mr. Hendrix asked for clarification on what prompted the decision and Mr. Cone stated that custodial supervisors had been found sleeping in their offices.

39. When Mr. Hendrix asked which supervisors had been observed sleeping, Mr. Cone stated "that's not your concern."

40. Mr. Hendrix submitted a detailed Incident Report on May 17th complaining about Mr. Cone through GA Southern's EthicsPoint incident management system on June 12, 2025. A true and correct copy of the June 12, 2025, Incident Report is attached as **Exhibit 1**.

41. In the Incident Report, Mr. Hendrix specifically complained about discriminatory actions taken by Mr. Cone.

42. For example, Mr. Hendrix complained Mr. Cone subjected the majority-black custodial department to higher disciplinary scrutiny.

43.    Mr. Hendrix complained that the custodial department was excluded from wage increases.

44. Mr. Hendrix complained that Mr. Cone had "questioned how a transgender male 'slipped through the cracks' and got hired, and stated that we [the University] 'need to find a way to get rid of staff on FMLA.'"

45.    Mr. Hendrix specifically stated in the Incident Report that Mr. Cone's actions "raise[d] serious concerns regarding [Mr. Cone's] discriminatory intent and disregard for federal protections."

46.    Following Mr. Hendrix's submission of the Incident Report, Mr. Cone continued to subject Mr. Hendrix and the custodial department to racially discriminatory treatment.

47.    On July 24, 2025, Mr. Hendrix sent an email to GA Southern HR Employee Relations Manager, Kiera Stansell regarding his concerns about Mr. Cone. A copy of the July 24, 2025 email is attached as **Exhibit 2**.

48.     In his July 24 email to Ms. Stansell, Mr. Hendrix again complained of Mr. Cone's hostile and harassing behavior towards members of the custodial staff.

49.    GA Southern terminated Mr. Hendrix on September 2, 2025, following his complaints about discrimination. A copy of the termination letter is attached as **Exhibit 3**.

50.    The termination letter stated that Mr. Hendrix violated GSU Work Rules regarding: (1) failure to perform duties required by the employee's job description or assignments directed by management, including the failure to abide by the particular rules of an employee's place of work; (2) absenteeism and misuse of sick leave; (3) insubordination or willful disobedience; and (4) falsification of institutional documents or records including applications for employment or timecards.

51.    Prior to his termination, Mr. Hendrix had a clean employment record with consistently positive annual reviews and no instances of progressive discipline.

52.    On the day of his termination, September 2, 2025, Mr. Hendrix submitted another incident report through GSU's EthicsPoint incident management system. A copy of the September 2, 2025 incident report is attached as **Exhibit 4**.

53.    In the September 2, 2025 incident report, Mr. Hendrix raised concerns that his termination was retaliation for complaining about and opposing Mr. Cone's racially and sexually discriminatory actions and comments.

54.    On September 4, 2025, Mr. Hendrix submitted an appeal of his termination to Associate Vice President for Facilities Services Matthew Shingler in accordance with administrative practices dictated by the Board.

55. On September 10, 2025, the University denied Mr. Hendrix's appeal request to Vice President Shingler without providing Mr. Hendrix an opportunity to present witnesses or evidence, or otherwise meaningfully challenge the factual basis of his termination.

56. On September 14, 2025, Mr. Hendrix formally requested a hearing before a University Appeal Hearing Panel as permitted under the Board's Grievance Policy.

57. On September 18, 2025, Mr. Hendrix filed a charge of discrimination with the EEOC asserting that he was terminated by the University in retaliation for complaining about and opposing discriminatory conduct by University management.

58. The Appeal Hearing Panel hearing was held on December 9, 2025.

59. During the hearing, Mr. Hendrix and his witnesses testified to past and current procedures for departmental timekeeping, inconsistencies in Standard Operating Procedure ("SOP") documents and adherence, and the lack of communication from Mr. Hendrix's leadership.

60. The University's representative, Stephen Frawley, testified that Mr. Hendrix's termination was solely due to Mr. Hendrix's failure to submit a time off request for a work absence on July 25, 2025, through the proper reporting system.

61.    Mr. Frawley repeatedly stated that the other Work Rule violations cited in Mr. Hendrix's termination letter were not considered in Mr. Hendrix's dismissal.

62.    Following the hearing, the Appeal Hearing Panel issued its findings and recommendations regarding Mr. Hendrix's termination. A true and correct copy of the Appeal Hearing Panel's findings and recommendations is attached as **Exhibit 5**.

63.    The Appeal Hearing Panel found that GSU leadership failed to follow several GSU Work Rules and SOP guidelines, including failure to apply the guidelines fairly and consistently across all departments and failure to attempt conflict resolution despite recommendations from HR to do so.

64.    The Appeal Hearing Panel also found that GSU leadership terminated Mr. Hendrix without progressive discipline.

65.    The Appeal Hearing Panel found that the SOP documents applicable to Mr. Hendrix's required that progressive discipline be followed before Mr. Hendrix could be terminated.

66.    The Appeal Hearing Panel also found that GA Southern failed to apply the University's progressive discipline policies and that the University's failure to do so "was detrimental to both this singular employee [Mr. Hendrix] and the department as a whole."

67.    The Appeal Hearing Panel recommended that Mr. Hendrix be provided with the opportunity to be reinstated or retire with full benefits and back pay for the period between his termination and his retirement due to the University's failure to adhere to its own Work Rules and SOP guidance.

68.    The review Appeal Hearing Panel submitted its findings and recommendations to Ron Stalnaker, GSU's Vice President for Business and Finance, on December 19, 2025.

69.    On January 15, 2026, Mr. Stalnaker wrote a letter to Mr. Hendrix upholding Mr. Hendrix's termination. A true and correct copy of the January 15, 2026 letter is attached as **Exhibit 6**.

70.    Mr. Stalnaker provided Mr. Hendrix with the option to either voluntarily resign or retire without benefits or back pay.

71.    Mr. Stalnaker did not provide Mr. Hendrix with the option to be reinstated as the Appeal Hearing Panel recommended.

72.    Mr. Stalnaker did not provide Mr. Hendrix with the option to retire with benefits and back pay as the Appeal Hearing Panel recommended.

73.    Mr. Stalnaker did not provide a substantive explanation for disregarding the Appeal Hearing Panel's recommendations.

74.    Within 20 calendar days of receiving Mr. Stalnaker's letter, Mr. Hendrix submitted an application for Discretionary Review of Stalnaker's decision

11

to the Board's Discretionary Review Committee.

75.    On May 15, 2026, the Board sent Mr. Hendrix a letter stating that they had considered his application for discretionary review and voted to affirm GA Southern's decision. A copy of the Board's May 15, 2026 decision is attached as **Exhibit 7**.

76.    The Board indicated that its decision upholding Mr. Hendrix's termination was the "final action to be taken in this matter."

77.    The Board did not provide any explanation for affirming the University's decision to maintain Mr. Hendrix's termination in opposition to the Appeal Hearing Board's findings and recommendations.

## PLAINTIFF'S EXHAUSTION OF HIS ADMINISTRATIVE REMEDIES

78.    Mr. Hendrix timely filed a charge of discrimination against the Board with the Equal Employment Opportunity Commission ("EEOC") regarding the University and Board's actions.

79.    Mr. Hendrix received a Notice of Right to Sue from the EEOC on April 2, 2026. A copy of the notice is attached as **Exhibit 8**.

80.    Mr. Hendrix pursued an appeal of his termination pursuant to the policies of Georgia Southern and the University System of Georgia.

81.    On May 15, 2026, at the conclusion of Mr. Hendrix's appeal, the Board issued a final decision upholding Mr. Hendrix's termination and GA

12

Southern's refusal to reinstate Mr. Hendrix. *See* **Exhibit 7**.

82.    Mr. Hendrix files this complaint within 90 days of receiving his Notice of Right to Sue from the EEOC.

83.    Mr. Hendrix has exhausted his administrative remedies and met all conditions precedent to bringing to his claims.

## COUNT I: RETALIATION IN VIOLATION OF TITLE VII AGAINST DEFENDANT BOARD OF REGENTS FOR THE UNIVERSITY SYSTEM OF GEORGIA

84.    Plaintiff incorporates by reference the preceding allegations as if fully restated below.

85.    The Board is an employer as defined by Title VII.

86.    Title VII forbids retaliation against an employee who opposes unlawful employment discrimination or participates in a protected activity under Title VII.

87.    Mr. Hendrix engaged in activity protected by Title VII when opposed unlawful discrimination during his employment with GA Southern by raising internal complaints concerning race and gender discrimination, including filing multiple formal, written complaints internally about discriminatory and retaliatory actions taken by University management.

88.    Mr. Hendrix also engaged in protected activity prior to Mr. Stalnaker and the Board's decisions to uphold his termination by filing a charge of discrimination with the EEOC immediately following his termination.

89.     Following Mr. Hendrix's termination, a GA Southern Appeal Hearing Panel found that Mr. Hendrix's termination did not comply with University policies and recommended Mr. Hendrix be reinstated or permitted to retire with full benefits and backpay.

90.     Despite the Appeal Hearing Panel's findings, GA Southern Vice President Ron Stalnaker upheld Mr. Hendrix's termination.

91.     The Defendant Board also upheld Mr. Hendrix's termination.

92.     GA Southern and Defendant retaliated against Mr. Hendrix by opening unwarranted timekeeping audits against him and his subordinate employees, terminating him without progressive discipline in violation of University policies after he raised concerns about and filed a complaint of discrimination, and affirming his termination after he formally filed charge of discrimination and retaliation with EEOC and in spite of the Appeal Hearing Panel's recommendations that he be reinstated or be permitted to retire with benefits and backpay.

93.     Defendant took adverse employment actions against Mr. Hendrix in retaliation for his protected activity.

94.     The Board's retaliatory actions were intentional and willful and intended to chill Mr. Hendrix's exercise of his federally protected rights.

14

95.    The Board's unlawful retaliation caused Mr. Hendrix to suffer lost wages and benefits, mental and emotional distress, pain and suffering, costs and attorney's fees, and other damages for which the Board is liable.

96.    The University and the Board willfully engaged in retaliatory conduct which violated Mr. Hendrix's federal rights with a willful disregard for those rights.

97.    Defendant is liable to Mr. Hendrix for punitive damages as a result of its willful conduct.

<strong>PRAYER FOR RELIEF</strong>

Mr. Hendrix respectfully requests that the Court:

(1)    Find that Defendant violated Title VII by retaliating against Mr. Hendrix for engaging in activity protected by Title VII.

(2)    Order Defendant to make Plaintiff whole through reinstatement to his former position, with full back pay and other benefits and expenses in amounts to be proven at trial;

(3)    If reinstatement is not feasible under the circumstances, grant Plaintiff front pay, including lost future wages;

(4)    Grant Plaintiff compensatory damages for pain and suffering and mental and emotional distress in an amount determined by the enlightened conscience of a jury;

15

(5)     Award Plaintiff punitive damages arising from Defendant's willful and intention violation of his federally protected rights.

(6)     Award Plaintiff pre- and post-judgment interest at the maximum rates allowable by law;

(7)     Award Plaintiff his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and any other applicable laws.

(8)     Award all other relief to which Plaintiff may be entitled as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Mr. Hendrix requests a trial by jury under Fed. R. Civ. P. 38.

Respectfully submitted: Monday, June 29, 2026.

**PARKS, CHESIN & WALBERT, P.C.**   */s/ Andrew Coffman*
1355 Peachtree NE, Suite 2000        Andrew Coffman
Atlanta, GA 30309                    Georgia Bar No. 173115
Telephone: 404-873-8000             acoffman@pcwlawfirm.com
Fax: 404-873-8050

*Counsel for Plaintiff*